UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAQUETA WILLIAMS, | : | |
| | : | |
| Plaintiff | : | |
| v | : | |
| | : | No.  2:20-CV-003387 |
| ROC NATION, LLC; ROBERT RIHMEEK | : | |
| WILLIAMS, a/k/a MEEK MILL; SHAWN | : | |
| COREY CARTER, a/k/a JAY-Z; | : | |
| AMAZON.COM, INC. and THE INTELLECTUAL: | | |
| PROPERTY CORPORATION | : | |
| | : | |
| Defendants | : | |
| | : | |

## COMPLAINT - CIVIL ACTION

AND NOW comes the plaintiff Saqueta Williams, by and through counsel, and demands of

the defendants, jointly and severally, damages for loss sustained, plus interest, costs and damages for

prejudgment delay upon the causes of action set forth in the following:

## JURISDICTION AND VENUE

1.      Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set

forth fully hereto.

2.      This Court maintains original jurisdiction over the instant claims pursuant to 28

U.S.C.A. § 1332 as a result of the controversy between the parties exceeding the sum or value of

$75,000, exclusive of interest and costs, and is between citizens of different States.

3.      For the purpose of diversity pursuant to 28 U.S.C.A. § 1332, the plaintiff is a citizen

of the Commonwealth of Pennsylvania, defendant Roc Nation, LLC is a citizen of the state of

NewYork, defendant Robert Rihmeek Williams is a citizen of the state of Georgia, defendant Shawn

Corey Carter is a citizen of the state of California; defendant Amazon.Com, Inc. is a citizen of  the

state of Washington; and defendant Intellectual Property Corporation is a citizen of the state of California.

4.      Venue of this matter is properly laid in this judicial district pursuant to 28 U.S.C. §1391 upon a basis that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this judicial district.

## THE PARTIES AND RELATED ENTITIES

5.      Plaintiff Saqueta Williams is an adult individual residing within the Commonwealth of Pennsylvania.  Plaintiff may be contacted by and through counsel, Steven F. Marino, Esquire or Joseph Auddino, Esquire of Marino Associates at 301 Wharton Street, Philadelphia, PA 19147.

6.      Defendant Roc Nation, LLC is a business entity operating with an office for process of service located 540 W. 26th Street, New York, NY 10001.  At all relevant times material hereto, defendant Roc Nation, LLC was a business for profit engaged in the industry of publishing information.  At all relevant times material hereto, defendant Roc Nation, LLC acted by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment.  At all relevant times material hereto, defendant Roc Nation, LLC regularly conducted business in the Commonwealth of Pennsylvania and utilized the market place of Philadelphia County.

7.      Defendant Robert Rihmeek Williams, a/k/a Meek Mill, is an adult individual with an office for the service of process located 529 5th Avenue, New York, NY 10017.  At all relevant times material hereto, defendant Robert Rihmeek Williams was an employee, agent, worker and/or representative of defendant Roc Nation, LLC acting within the scope of his employment.

2

8.      Defendant Shawn Corey Carter, a/k/a Jay-Z, is an adult individual with an office for the service of process located 540 W. 26th Street, New York, NY 10001.  At all relevant times material hereto, defendant Shawn Corey Carter was an employee, agent, worker and/or representative of defendant Roc Nation, LLC acting within the scope of his employment.

9.      Defendant Amazon.com, Inc. is a business entity operating with an office for process of service located 410 Terry Avenue N., Seattle, WA 98109-5210.  At all relevant times material hereto, defendant Amazon.com, Inc. was a business for profit engaged in the industry of technology and artificial intelligence providing service on e-commerce, cloud computing, and digital streaming. At all relevant times material hereto, defendant Amazon.com, Inc. acted to distribute downloads and streaming of video, music, and audiobooks through a paid subscription product, Amazon Prime Video.  At all relevant times material hereto, defendant Amazon.com, Inc. acted by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment.  At all relevant times material hereto, defendant Amazon.com, Inc. regularly conducted business in the Commonwealth of Pennsylvania and utilized the market place of Philadelphia County.

10.      Defendant Intellectual Property Corporation is a business entity operating with an office for process of service located 6007 Sepulveda Boulevard, Van Nuys, CA 91411.   At all relevant times material hereto, defendant Intellectual Property Corporation was a business for profit engaged in the industry of developing and producing television, film, and documentary series broadcasted on most major cable networks and streaming platforms in the United States.  At all relevant times material hereto, defendant Intellectual Property Corporation acted by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment.  At all relevant times material hereto, defendant Intellectual Property Corporation

regularly conducted business in the Commonwealth of Pennsylvania and utilized the market place of Philadelphia County.

## DEFENDANTS REGULARLY CONDUCT BUSINESS IN
## THIS JUDICIAL DISTRICT

11.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

12.     The defendants, jointly participated in the creation, production and publishing of a documentary series, *Free Meek,* marketed as a 2019 true-crime documentary about the challenges of American rapper defendant Robert Rihmeek Williams, a/k/a Meek Mill following a disputed 2017 criminal conviction and subsequent violations of probation.

13.     The documentary series *Free Meek* was largely filmed on location in or about the City of Philadelphia within this judicial district.

14.     Subscriptions to the product Amazon Prime Video have been subject to marketing and sale to customers within this judicial district.

## GENERAL ALLEGATIONS

15.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

16.     In or about the calendar year 2008, the plaintiff Saqueta Williams submitted a Police Officer Recruit Application with the City of Philadelphia in an effort to be considered a cadndiate to become a Philadelphia Police Officer.

17.     Plaintiff Saqueta Williams completed an extensive police training program at the

4

Philadelphpia Police Acdemy and an eighteen (18) month on-the-job probationary period.

18.     In or about the calendar year 2010, the plaintiff Saqueta Williams was employed by the City of Philadelphia to serve full time as a permemant police officer on behalf of the City of Philadelphia.

19.     Plaintiff Saqueta Williams served the City of Philadelphia faithfully as a permemant police officer during the calendar years 2010 through June 2017.

## THE CRIMINAL CHARGES LODGED AND ACQUITTAL OF PLAINTIFF SAQUETA WILLIAMS

20.     Plaintiff Saqueta Williams incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

21.     On or about January 25, 2017, at approximately 1:30 am, in the vicinity of 4800 block of North Broad Street, Philadelphia, PA, plaintiff Saqueta Williams was off-duty when she and her significant other were confronted by violence and aggression presented to them by a group of four (4) unknown females.

22.     At the aforementioned date, time and location, four (4) unknown females attacked, assaulted, and battered the plaintiff Saqueta Williams' significant other as plaintiff Saqueta Williams stood within the zone of danger.

23.     In an effort to deescalate the violence and rescue her significant other from suffering further harm and loss, plaintiff Saqueta Williams identified herself as a police officer, and gave the four (4) unknown females verbal commands to move away from her significant other.

24.     The four (4) unknown females refused to obey the commands of the plaintiff Saqueta Williams.

25.     In an effort to deescalate the violence and rescue her significant other from suffering

further harm and loss, plaintiff Saqueta Williams drew her firearm.

26. As a result of plaintiff Saqueta Williams having drawn her firearm, the four (4) unknown females ceased their attack, dispersed, and the plaintiff and her significant other were able to retreat to a place of safety.

27. On or about June 9, 2017, as a result of having drawn her firearm on January 25, 2017 in an effort to rescue herself and significant other from suffering harm and loss from the violent attack of four (4) unknown females, plaintiff Saqueta Williams was arrested by the Philadelphia Police Department and charged by the Office of the Philadelphia District Attorney with violating Section 2701 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. §2701 [relating to Simple Assault]; Section 907 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. § 907 [relating to Possession of Instrument of Crime]; and Section 2705 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. §2705 [relating to Recklessly Endangering Another Person].

28. On February 12, 2019, following a jury trial convened by the Honorable Philadelphia County Court of Common Pleas Judge Lucretia Clemons, the plaintiff Saqueta Williams was acquitted of all criminal charges lodged against her arising from the January 25, 2017 incident.

### THE "DO NOT CALL LIST" MAINTAINED BY THE OFFICE OF THE PHILADELPHIA DISTRICT ATTORNEY

29. Plaintiff Saqueta Williams incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

30. The Office of the Philadelphia District Attorney maintains a list identifying police officers who have histories of arrests, disciplinary actions, or providing false testimony.

31. Upon information and belief, the list divides the police officers' names appearing on the list into groupings, classifying the police officers whose serious misconduct rendered them

problematic as witnesses and others whose offenses were less serious.

32.     Upon information and belief, the Philadelphia District Attorney directed employee prosecutors not to call some of the police officers whose names appear on the list as witnesses to offer testimony in criminal prosecutions.

33.     This list identifying police officers who have histories of arrests, disciplinary actions, or providing false testimony maintained by the Office of the Philadelphia District Attorney has been referred to as the "Do Not Call List" by media sources.

34.     Upon information and belief, the "Do Not Call List" maintained by the Office of the Philadelphia District Attorney provides a detailed factual summary of the wrongdoing relating to each police officer whose name appears.

35.     Upon information and belief, the "Do Not Call List" maintained by the Office of the Philadelphia District Attorney describes a wide range of wrongdoings relating to officers whose names appear on the list, some of which have no relation to corruption, dishonesty, or perjury.

36.     Upon information and belief, as a result of criminal charges having been lodged against the plaintiff Saqueta Williams arising from the aforementioned January 25, 2017 incident, the Office of the Philadelphia District Attorney included plaintiff Saqueta Williams on the Office of the Philadelphia District Attorney's "Do Not Call List."

37.     The summary of facts detailing the alleged wrongdoing of the plaintiff Saqueta Williams which appears in the content of the Office of the Philadelphia District Attorney's "Do Not Call List" does not provide a statement that the plaintiff Saqueta Williams committed acts of dishonesty.

38.      The summary of facts detailing the alleged wrongdoing of the plaintiff Saqueta Williams which appears in the content of the Office of the Philadelphia District Attorney's "Do Not

Call List" does not provide a statement that the plaintiff Saqueta Williams committed acts of corruption.

39.     The summary of facts detailing the alleged wrongdoing of the plaintiff Saqueta Williams which appears in the content of the Office of the Philadelphia District Attorney's "Do Not Call List" does not provide a statement that the plaintiff Saqueta Williams committed acts of moral turpitude.

40.     At all relevant times material hereto, the defendants had free access to the full content of the Office of the Philadelphia District Attorney's "Do Not Call List".

41.     At all relevant times material hereto, the defendants knew the true reasons why the plaintiff Saqueta Williams appeared on the Office of the Philadelphia District Attorney's "Do Not Call List," which did not include dishonesty, corruption or moral turpitude.

42.     Upon information and belief, the plaintiff Saqueta Williams was a police officer who was deemed appropriate to be called as witness by prosecuting Philadelphia Assistant District Attorneys to testify on behalf of the Commonwealth with the approval of a Deputy Philadelphia Assistant District Attorney.

## THE DEFAMATORY COMMUNICATION

43.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

44.     On or about August 9, 2019, a five (5) part documentary series premiered on Amazon Prime Video entitled *Free Meek*.

45.     The documentary series *Free Meek* has been marketed as a 2019 true-crime documentary about the challenges of American rapper Robert Rihmeek Williams, a/k/a Meek Mill following a disputed 2017 criminal conviction and subsequent violations of probation.

46.     At all relevant times material hereto, the publication, utterance or broadcasting of the communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* was subject to censorship or control of the defendants within the meaning of 42 Pa.C.S.A. § 8345.

47.     Investigtive reporter Paul Solotaroff provides commentary in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* stating that, "*There is a reason why people call this town Filthadelhia.*"

48.     Investigtive reporter Paul Solotaroff provides commentary in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* stating that, "*Now there is a new District Attorney in town, and just the last couple of months we have been learning from the District Attorney's Office about a list of dirty and dishonest cops.*"

*49.*     Bradley Bridge, Esquire provides commentary in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* stating that, "*The DA's Office generated a specific list that has 66 names of police officers on it.  There have been findings by the police department the officers have lied to internal affairs, to other police officers, or in court.*"

*50.*     During the course of the commentary provided by Bradley Bridge, Esquire in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* a graphic of an image of the plaintiff Saqueta Williams is displayed on screen.

*51.*     The displaying of the image of the plaintiff Saqueta Williams on screen during the course of Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia,* in

conjunction with the commentary provided by investigative reporter Paul Solotaroff, imputes the impression in the minds of the average persons among whom it is intended to circulate that the plaintiff Saqueta Williams was a dirty, corrupt, immoral, and dishonest police officer.

52.     The displaying of the image of the plaintiff Saqueta Williams on screen during the course of the commentary provided by Bradley Bridge, Esquire in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* imputes the impression in the minds of the average persons among whom it is intended to circulate that plaintiff Saqueta Williams lied to or provided false and dishonest information to the Internal Affairs Division of the Philadelphia Police Department.

53.     The displaying of the image of the plaintiff Saqueta Williams on screen during the course of the commentary provided by Bradley Bridge, Esquire in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* imputes the impression in the minds of the average persons among whom it is intended to circulate that plaintiff Saqueta Williams lied to or provided false and dishonest information to the other police officers.

54.     The displaying of the image of the plaintiff Saqueta Williams on screen during the course of the commentary provided by Bradley Bridge, Esquire in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* imputes the impression in the minds of the average persons among whom it is intended to circulate that plaintiff Saqueta Williams provided false and dishonest testimony in court and committed the crime of perjury.

55.     The displaying of the image of the plaintiff Saqueta Williams on screen during the course of the commentary provided by Bradley Bridge, Esquire in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* imputes the impression in the minds of the

average persons among whom it is intended to circulate that plaintiff Saqueta Williams as a dirty, corrupt, immoral, and dishonest police officer.

56.     The communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* which imputes a message to the minds of the average persons among whom it is intended to circulate that the Philadelphia Police Department made a finding that plaintiff Saqueta Williams lied to internal affairs, to other police officers, or in court is false.

57.     The communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* which imputes a message to the minds of the average persons among whom it is intended to circulate that the Philadelphia Police Department made a finding that plaintiff Saqueta Williams lied to internal affairs, to other police officers, or in court places plaintiff Saqueta Williams in a false light.

58.     The communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* does not impute a message to the minds of the average persons among whom it is intended to circulate of the reasons why plaintiff Saqueta Williams appeared on the Office of the Philadelphia District Attorney's "Do Not Call List".

59.     The communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams that the plaintiff Saqueta Williams was dirty and dishonest police officer; and had lied to internal affairs, to other police officers, or in court were not extemporaneous remarks.

60.     The communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams that the plaintiff Saqueta Williams was dirty and dishonest police officer; and had lied to internal affairs, to other police officers, or in court represents a statement of provable false and untrue facts.

11

61. The communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams that the plaintiff Saqueta Williams was dirty and dishonest police officer; and had lied to internal affairs, to other police officers, or in court does represent an expression of opinion.

62. At all relevant times material hereto, the defendants expected that average persons among whom Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* was intended to circulate would conclude that the plaintiff Saqueta Williams appeared on the Office of the Philadelphia District Attorney's "Do Not Call List" upon a basis that she was a dirty, corrupt, immoral, and dishonest police officer.

63. The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* has the impact of tending to harm the reputation of plaintiff Saqueta Williams as to lower her in the estimation of the community.

64. The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* has the impact of tending to tarnish the reputation of plaintiff Saqueta Williams and expose her to public hatred, contempt, and ridicule.

65. The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* as it relates to the plaintiff Saqueta Williams is defamatory in character.

66. The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams is defamatory per se.

67.   The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams is defamatory per se within the meaning of the Restatement (Second) of Torts, Section 570.

68.   The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams is defamatory per se within the meaning of the Restatement (Second) of Torts, Section 571.

69.   The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams is defamatory per se within the meaning of the Restatement (Second) of Torts, Section 573.

70.   Upon information and belief, never did the Philadelphia Police Department come to a finding that plaintiff Saqueta Williams ever provided false information or lied to the Internal Affairs Division of the Philadelphia Police Department.

71.   Upon information and belief, never did the Philadelphia Police Department come to a finding that plaintiff Saqueta Williams ever provided false information or lied to other police officers.

72.   Upon information and belief, never did the Philadelphia Police Department come to a finding that plaintiff Saqueta Williams ever lied in court and committed the crime of perjury.

73.   Upon information and belief, never did the Philadelphia Police Department come to a finding that plaintiff Saqueta Williams was a dirty, dishonest, immoral or corrupt police officer.

74.   Upon information and belief, never did the Office of the Philadelphia District Attorney come to a finding that plaintiff Saqueta Williams ever provided false information or lied to the Internal Affairs Division of the Philadelphia Police Department.

75.     Upon information and belief, never did the Office of the Philadelphia District Attorney come to a finding that plaintiff Saqueta Williams ever provided false information or lied to other police officers.

76.     Upon information and belief, never did the Office of the Philadelphia District Attorney come to a finding that plaintiff Saqueta Williams ever provided false information and committed the crime of perjury.

77.     Upon information and belief, never did the Office of the Philadelphia District Attorney come to a finding that plaintiff Saqueta Williams was a dirty, dishonest, immoral or corrupt police officer.

## COUNT I
## DEFAMATION
### (Plaintiff Saqueta Williams v All Defendants)

78.     Plaintiff Saqueta Williams incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

79.     At all relevant times material hereto, defendants exercised control and supervision of the planning and coordination of various aspects of the Season 1, Episode 4 of the documentary series *Free Meek*, including but not limited to, selecting the script; selecting the substance of communication to be broadcasted; selecting the participants; coordinating the writing, directing, and editing the content of communication; and arranging financing for the project.

80.     At all relevant times material hereto, defendants were responsible, in whole or in part, for the publication and broadcasting of the aforementioned Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia.*

14

81.     Defendants inspected and edited the script of Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* prior to its broadcast or publication.

82.     Prior to its broadcast or publication of Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia,* defendants reviewed the content of the production for accuracy and truthfulness.

83.     Defendants inspected and reviewed the Office of the Philadelphia District Attorney's "Do Not Call List," and understood the material facts giving rise to each police officer's placement on the "Do Not Call List."

84.     Defendants selected and chose to include that portion of the Office of the Philadelphia District Attorney's "Do Not Call List" which referenced the plaintiff Saqueta Williams into Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia.*

85.     Defendants selected and chose where and when the image of the plaintiff Saqueta Williams would appear within the content of Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia.*

86.     Defendants selected and chose to reference the plaintiff Saqueta Williams in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* with the intent of communicating the message that the plaintiff Saqueta Williams was in fact a dirty, corrupt, immoral, and dishonest police officer.

87.     Prior to its broadcast or publication of Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia,* defendants knew that the plaintiff Saqueta Williams' appearance on the Office of the Philadelphia District Attorney's "Do Not Call List" was not a result of her having been determined to be a dirty, corrupt, immoral, and dishonest police officer.

15

88.     Prior to its broadcast or publication of Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia,* defendants knew that the plaintiff Saqueta Williams' appearance on the Office of the Philadelphia District Attorney's "Do Not Call List" was not a result of the Philadelphia Police Department having made a finding that plaintiff Saqueta Williams lied to internal affairs, to other police officers, or in court.

89.     At all relevant times material hereto, the defendants understood and appreciated the potential defamatory meaning arising from the publication of Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* and acted with a reckless disregard toward them.

90.     At all relevant times material hereto, the defendants knew and/or acted with a reckless disregard of the fact that the plaintiff Saqueta Williams was not a dirty, corrupt, immoral, and dishonest police officer.

91.     At all relevant times material hereto, the defendants knew and/or acted with a reckless disregard of the fact that the plaintiff Saqueta Williams had not lied to internal affairs, to other police officers, or in court.

92.     The aforementioned communication broadcasted or published in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* by defendants, communicating the message that the plaintiff Saqueta Williams was in fact a dirty, corrupt, immoral, and dishonest police officer was and is in fact false.

93.     At all relevant times material hereto, defendants knew that the defamatory communication would impute the impression in the minds of the average persons among whom it is intended to circulate that the plaintiff Saqueta Williams was a dirty, corrupt, immoral, and dishonest police officer was in fact false.

94.     Defendants caused the aforementioned communication presented in Season 1, Episode 4 of the documentary series Free Meek entitled *Filthadelhia* relating to the plaintiff Saqueta Williams to be published and circulated with a reckless disregard for its falsity.

95.     Defendants published and circulated the aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams with a high degree of awareness of the probable falsity of the statements.

96.     Defendants published and circulated the aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams despite having entertained serious doubts as to the truth of the publication.

97.     Defendants published and circulated the aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams despite having entertained serious doubts as to the truth of the publication.

98.     At all relevant times material hereto, defendants acted with knowledge that the defamatory and offending aforementioned communication was false.

99.     At all relevant times material hereto, defendants acted with a reckless disregard of whether the defamatory and offending aforementioned communication was false.

100.     At all relevant times material hereto, defendants had obvious reason to doubt the veracity of the defamatory and offending aforementioned communication.

101.     Defendants acted with an evil motive or with a reckless or deliberate indifference to the rights of plaintiff Saqueta Williams by publishing, uttering, or otherwise broadcasting the

defamatory communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams.

102.     Defendants maliciously caused the aforementioned defamatory communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams to be published.

103.     Defendants were not privileged or otherwise justified in publishing, uttering, or otherwise broadcasting the communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* relating to the plaintiff Saqueta Williams.

104.     The aforementioned actions of the defendants were outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

105.     Defendants are liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 570.

106.     Defendants are liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 571.

107.     Defendants are liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 573.

108.     Defendants are liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Agency, Section 219.

109.     Defendants are liable to the plaintiff for damages pursuant to the provisions of 42 Pa.C.S.A. §§ 8341 – 8345.

110.     As a direct and proximate result of the defendants' aforementioned malicious actions or failures to act, the plaintiff was caused to suffer a damage to her reputation.

111.    As a direct and proximate result of the defendants' malicious actions or failures to act, the plaintiff was caused to suffer discomfort, trauma, humiliation, embarrassment, emotional distress, suicidal ideation, anxiety, depression characterized by feelings of despair, hopelessness, and despondency, some or all of which may be permanent and which may continue indefinitely into the future.

112.    As a direct and proximate result of the defendants' malicious actions or failures to act, the plaintiff was caused to suffer physical symptoms and injury characterized by weight loss, sleeplessness, headaches, appetite loss, and upper abdominal discomfort, described as burning sensation, bloating or gassiness, and nausea.

113.    As a direct and proximate result of the defendants' malicious actions or failures to act, the plaintiff has been required to undergo outpatient healthcare, ongoing outpatient healthcare, medical evaluations and may require other medical attention.

114.    As a direct and proximate result of the defendants' malicious actions or failures to act, the plaintiff was caused to suffer a loss of life's pleasures which may continue indefinitely into the future.

115.    As a direct and proximate result of the defendants' malicious actions or failures to act, the plaintiff incurred medical expenses for diagnosis, treatment and care in an effort to cure herself of the illness aforementioned and may incur additional medical expenses continuing on into the future.

116.    As a direct and proximate result of the defendants' malicious actions or failures to act, the plaintiff has been caused to expend various and diverse sums of money in an effort to cure herself of the illness aforementioned and may incur additional expenses continuing on into the future.

19

WHEREFORE, plaintiff Saqueta Williams prays for judgment in her favor and against defendants, jointly and severally, and the relief which follows:

117.    That plaintiff be awarded compensatory damages as proven at trial;

118.    That plaintiff be awarded punitive damages as proven at trial;

119.    That plaintiff be awarded interest and damages for prejudgment delay;

120.    That plaintiff be awarded further relief as this Court may deem appropriate.

### COUNT II
### PRESENTATION OF FALSE LIGHT
### (Plaintiff Saqueta Williams v All Defendants)

121.    The plaintiff incorporates by reference the previous paragraphs of the Amended Complaint as if set forth herein in full.

122.    The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* presents gross exaggerations and distorted statements in the referencing of plaintiff.

123.    The aforementioned communication presented in Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia,* referencing plaintiff Saqueta Williams, presents plaintiff Saqueta Williams in a false light and which is deemed highly offensive to sensibilities of a reasonable person.

124.    The defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff Saqueta Williams would be placed.

125.    The defendants publicized the information and content included in the aforementioned Season 1, Episode 4 of the documentary series *Free Meek* entitled *Filthadelhia* referencing plaintiff Saqueta Williams with actual malice.

126.   The conduct of the defendants violated the provisions of the Restatement (Second) of Torts Section 652E.

127.   As a direct and proximate result of the defendants' negligent, malicious, reckless, and intentional actions, plaintiff Saqueta Williams was caused to suffer those harms and losses aforementioned.

WHEREFORE, plaintiff Saqueta Williams prays for judgment in her favor and against defendants, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     That plaintiff be awarded punitive damages as proven at trial;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.


## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff Saqueta Williams v All Defendants)

128.   The plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth herein in full.

129.   At all relevant times material hereto, the defendants owed plaintiff Saqueta Williams a common law duty to refrain from acting in a manner which they should have realized would involve an unreasonable risk of causing her to suffer emotional distress, illness, and/or bodily harm.

130.   The defendants knew or reasonably should have known that publishing the aforementioned defamatory communication(s) relating to the plaintiff Saqueta Williams involved an unreasonable risk that emotional distress would result.

21

131.    The conduct of the defendants violated the provisions of the Restatement (Second) of Torts, Section 46.

132.    The aforementioned behavior of the defendants was deplorable and conducted with an intent to deeply wound the plaintiff, and damage her political aspirations and her reputation.

133.    As a result of the defendants having published false information regarding plaintiff Saqueta Williams, plaintiff Saqueta Williams was caused to suffer emotional distress.

134.    As a result of the defendants having published defamatory information regarding plaintiff Saqueta Williams, plaintiff Saqueta Williams was caused to suffer emotional distress.

135.    The emotional distress suffered by plaintiff Saqueta Williams arose as a direct and proximate result of the aforementioned actions of the defendants.

136.    As a direct and proximate result of negligent, malicious, reckless, and intentional actions as set forth herein, plaintiff Saqueta Williams was caused to suffer emotional distress, grief, and fright to a degree that no reasonable person should be expected to endure.

WHEREFORE, plaintiff Saqueta Williams prays for judgment in her favor and against the defendants, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     That plaintiff be awarded punitive damages as proven at trial;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT IV
## CIVIL CONSPIRACY
### (Plaintiff Saqueta Williams v All Defendants)

137.     The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

138.     At all relevant times material hereto, defendants owed a duty to the plaintiff not to conspire with others for the purpose of subjecting the plaintiff to injury arising from the publication of defamatory communications.

139.     At all relevant times material hereto, defendants owed a duty to the plaintiff not to conspire with others for the purpose of subjecting the plaintiff to injury arising from presenting her in a false light.

140.     At all relevant times material hereto, defendants owed a duty to the plaintiff not to conspire with others for the purpose of subjecting the plaintiff to emotional distress, illness, and/or bodily harm.

141.     Defendants engaged in a civil conspiracy with a purpose of defaming the plaintiff.

142.     Defendants engaged in a civil conspiracy with a purpose of presenting the plaintiff in a false light.

143.     Defendants engaged in a civil conspiracy with a purpose of causing the plaintiff to suffer emotional distress, illness, and/or bodily harm.

144.     With a common purpose to defame, present the plaintiff in a false light and injure the plaintiff, defendants engaged in the aforementioned overt acts.

145.     As a direct and proximate result of the conspiracy engaged by the defendants, the plaintiff was caused to suffer the aforementioned harms and losses.

146.     The defendants' actions were outrageous, malicious, willful, effected with a reckless indifference to the welfare of the plaintiff.

WHEREFORE, plaintiff Saqueta Williams prays for judgment in her favor and against the defendants, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     That plaintiff be awarded exemplary damages as proven at trial;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## JURY TRIAL DEMAND

147.     The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

148.     Trial by jury is demanded in the above entitled cause.


Respectfully submitted,

By:     */s/ Steven F. Marino*
        Steven F. Marino, Esquire
        PA Attorney I.D. No.   53034
        Joseph Auddino, Esquire
        PA Attorney I.D. No.   316752
        MARINO ASSOCIATES
        301 Wharton Street
        Philadelphia, PA 19147
        Telephone:     (215) 462-3200
        Telecopier:    (215) 462-4763
        smarino@marinoassociates.net
        jauddino@marinoassociates.net

Dated: July 10, 2020            *Attorneys for Plaintiff*

24