IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAQUETA WILLIAMS, | : | CIVIL ACTION |
| | : | NO. 20-03387 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ROC NATION, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

EDUARDO C. ROBRENO, J.                    October 21, 2020

**I.    INTRODUCTION**

This case involves claims by Saqueta Williams ("Plaintiff")

against Roc Nation, LLC; Robert Rihmeek Williams ("Meek Mill");

Shawn Corey Carter; Amazon.com, Inc.; and The Intellectual

Property Corporation (collectively, "Defendants") for

defamation, presentation of false light, intentional infliction

of emotional distress, and civil conspiracy.

All Defendants move to dismiss the Complaint for failure to

state a claim. Defendants Roc Nation, Meek Mill, and Shawn Corey

Carter also move to dismiss for lack of personal jurisdiction.

For the reasons that follow, the Court will deny Defendants'

Motions to Dismiss the defamation and false light claims and

will grant without prejudice Defendants' Motions to Dismiss the

intentional infliction of emotional distress and civil
conspiracy claims.

## II.  BACKGROUND[1]

Plaintiff's claims arise from Free Meek, a five-part
documentary series created, produced, and published by
Defendants.[2] The 2019 series explores rapper Meek Mill's
experience with the Philadelphia criminal justice system. During
the fourth episode, entitled Filthadelphia, investigative
reporter Paul Solotaroff discusses the Philadelphia District
Attorney's "Do Not Call List," which identifies police officers
with histories of arrests, disciplinary actions, or providing
false testimony. According to the Complaint, the District
Attorney directed prosecutors not to call some of the officers
on the list as witnesses in criminal prosecutions. Compl. ¶ 32,
ECF No. 1.

Solotaroff states: "Now there is a new District Attorney in
town, and just the last couple of months we have been learning

---

[1]    As required at the motion to dismiss stage, the Court accepts all well-
pled factual allegations as true. See Bell Atl. Corp. v. Twombly, 550 U.S.
544, 555 (2007).
[2]    Although Plaintiff did not attach a copy of Free Meek as an exhibit to
her Complaint, the Court "may consider an undisputedly authentic document
that a defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v.
White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing Cortec
Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert.
denied, 503 U.S. 960 (1992)). Therefore, the Court may consider the
documentary at this stage of the litigation.

from the District Attorney's Office about a list of dirty and dishonest cops." <u>Id.</u> ¶ 48. Attorney Bradley Bridge, a well-known attorney for the Defender Association of Philadelphia, also provides commentary on the "Do Not Call List," stating, "The DA's Office generated a specific list that has 66 names of police officers on it. There have been findings by the police department that the officers have lied to internal affairs, to other police officers, or in court." <u>Id.</u> ¶ 49.

During Bridge's commentary, an image of Plaintiff is briefly displayed on the screen. Plaintiff, who served as a Philadelphia police officer from 2010 until 2017, appeared on the "Do Not Call List" because she had previously been arrested and charged with assault, possession of an instrument of crime, and recklessly endangering another person after drawing her firearm during an off-duty confrontation. In February 2019, a jury acquitted Plaintiff of all charges stemming from the off-duty incident. According to Plaintiff, neither the Philadelphia Police Department nor the Office of the Philadelphia District Attorney ever found that she "lied to internal affairs, to other police officers, or in court." <u>Id.</u>

Plaintiff alleges that juxtaposing her image with Bridge's comments and with photographs of officers placed on the "Do Not Call List" as a result of their dishonest conduct communicates the false implication that she is a "dirty, corrupt, immoral,

3

and dishonest" police officer who lied to internal affairs, to other officers, and/or in court. Id. ¶ 51. Her claims in the instant action arise from this display of her image.[3]

## III. LEGAL STANDARD

A party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In deciding a motion to dismiss for lack of jurisdiction, "a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003)).

A party may also move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing such a motion, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant." Conard v. Pa. State Police, 902 F.3d 178, 182 (3d Cir. 2018) (quoting Jordan v. Fox, Rothschild, O'Brien & Frankel, 20

---

[3]   This is Plaintiff's second lawsuit arising from the same set of facts. Plaintiff voluntarily dismissed her claims in the first action without prejudice on April 29, 2020, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). See Williams v. Roc Nation, LLC, No. 2:20-cv-00122 (E.D. Pa.). In that action, Plaintiff brought claims for defamation per se and negligent infliction of emotional distress.

F.3d 1250, 1261 (3d Cir. 1994)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## IV.  DISCUSSION

### A.  **Personal Jurisdiction**

Defendants do not dispute that the Court has personal jurisdiction over Amazon.com and The Intellectual Property Corporation. However, Defendants Roc Nation, Shawn Corey Carter, and Meek Mill argue the Court has neither general nor specific jurisdiction over them. Plaintiff contends the Court has both. For the reasons stated below, Plaintiff has sufficiently alleged facts supporting the Court's exercise of specific jurisdiction over the Defendants in question.

A plaintiff bears "[t]he burden of demonstrating the facts that establish personal jurisdiction." Metcalfe v. Renaissance

Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)). If a defendant raises a jurisdictional defense, "the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" Id. (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)). If the district court does not hold an evidentiary hearing, a plaintiff "need only establish a prima facie case of personal jurisdiction." Id. (quoting O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)).

A federal court may exercise personal jurisdiction over a non-resident defendant on two bases: (1) general jurisdiction and (2) specific jurisdiction. General jurisdiction exists where a defendant's contacts with the forum "are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Where general jurisdiction is present, a court has personal jurisdiction over the defendant "even if the plaintiff's cause of action arises from the defendant's non-forum related activities." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 n.3 (3d Cir. 1996)).

In contrast, specific jurisdiction "is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Id. (quoting Vetrotex, 75 F.3d at 151) (internal quotation marks omitted). Consistent with the Due Process Clause of the Fourteenth Amendment, courts may exercise specific jurisdiction only over defendants with "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Pennsylvania's long-arm statute extends personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).

Where——as here——a plaintiff claims a non-resident defendant committed an intentional tort, a court may exercise specific jurisdiction if: (1) the defendant "committed an intentional tort"; (2) the plaintiff "felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort"; and (3) the defendant "expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." IMO Indus.,

7

Inc. v. Kiekert AG, 155 F.3d 254, 256 (3d Cir. 1998) (applying Calder v. Jones, 465 U.S. 783 (1984)).

Plaintiff easily satisfies the first two requirements. First, she sufficiently alleges Defendants committed the intentional torts of defamation and false light. See infra Sections IV.B.1-2. Second, Plaintiff is domiciled in Pennsylvania, and the communication at issue pertains to her role as a Philadelphia police officer. Plaintiff plausibly alleges she suffered the brunt of the alleged harm in the forum state.

Defendants Roc Nation, Shawn Corey Carter, and Meek Mill contend Plaintiff cannot satisfy the final requirement——i.e., that they "expressly aimed" the tortious conduct at the forum—— because Amazon.com distributes Free Meek to a global audience and the series does not evince an intent to interact with the forum. This argument is unpersuasive. Defendants' documentary is based on Meek Mill's experience in Philadelphia. Defendants filmed the documentary largely in and around the city, and the series contains multiple interviews with Philadelphia residents. By Defendants' own admission, the documentary seeks to spotlight "how Philadelphia police, prosecutors, and courts failed to serve the ends of justice in the case of Meek Mill, who was arrested in Philadelphia as a teenager." Defs.' Mot. to Dismiss 1, ECF No. 19-1. The allegedly tortious activity concerns the

Philadelphia District Attorney's "Do Not Call List" and Plaintiff's role as a Philadelphia police officer.

For these reasons, Plaintiff sufficiently alleges that Defendants "expressly aimed [their] tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." IMO Indus., 155 F.3d at 256. Amazon.com's decision to distribute the series worldwide does not dictate a different outcome, and Defendants' reliance on Gorman v. Jacobs, 597 F. Supp. 2d 541, 548 (E.D. Pa. 2009), and Remick, 238 F.3d at 259, to claim otherwise is misplaced. Those cases involve photographs and statements originating outside the forum and posted on globally accessible websites. The Gorman defendants' only references to Pennsylvania were made "in passing," and their only contacts with the forum were via their internet activity. 597 F. Supp. 2d at 550. In Remick, the goal of the website at issue was to provide information about a defendant who was an Indiana resident. 238 F.3d at 259; see also Marks v. Alfa Grp., No. 08-5651, 2009 WL 1838358, at *6 (E.D. Pa. June 25, 2009) (finding no personal jurisdiction over a foreign defendant in a defamation claim where "the Releases . . . had no readily apparent connection with Pennsylvania"), aff'd, 369 F. App'x 368 (3d Cir. 2010).

In contrast, the instant action involves a multi-part documentary series about and filmed primarily in the forum,

which happens to be available to a worldwide audience. Where, as here, the forum serves as the focal point of Defendants' allegedly tortious behavior, the "added wrinkle of the internet," Gorman, 597 F. Supp. 2d at 547, does not place Defendants beyond the Court's jurisdiction.

Because Defendants expressly aimed their conduct at the forum and could reasonably have anticipated "being haled into court" in Pennsylvania——and Philadelphia, in particular——as a result of their forum-state activities, the Court's assertion of jurisdiction comports with traditional notions of fair play and substantial justice. See Remick, 238 F.3d at 255.

Therefore, the Court will deny the Motion to Dismiss for lack of personal jurisdiction.[4]

## B.   **Failure to State a Claim**

Defendants allege Plaintiff's Complaint fails to state a claim under the four theories on which she relies. For the reasons that follow, the Complaint states claims for defamation (Count I) and false light (Count II) but fails to state claims for intentional infliction of emotional distress (Count III) and civil conspiracy (Count IV).

---

[4]     Because Plaintiff has established a prima facie case of specific jurisdiction with respect to all Defendants, the Court need not reach Defendants Roc Nation, Shawn Corey Carter, and Meek Mill's argument that the Court lacks general jurisdiction over them.

1.   Defamation

A communication is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Thomas Merton Ctr. v. Rockwell Int'l Corp., 442 A.2d 213, 215 (Pa. 1981) (quoting Birl v. Phila. Elec. Co., 167 A.2d 472, 475 (Pa. 1960)).

In an action for defamation under Pennsylvania law, the plaintiff must prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a).

Plaintiff's defamation claim relies on a theory of defamation by implication. Pennsylvania law permits such a theory where "the words utilized themselves are not defamatory in nature" but "the context in which the[] statements are issued creates a defamatory implication." Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (Robreno, J.) (citing Thomas Merton Ctr., 442 A.2d at 217); see also Graboff v. Colleran Firm, 744 F.3d 128, 136 (3d Cir. 2014) ("[D]efamation may be

11

established where a statement, viewed in context, creates a
false implication.").

Taken as true, the facts alleged in Plaintiff's Complaint
state a claim for defamation. Plaintiff plausibly alleges the
juxtaposition of her image with Bridge's statement that "[t]here
have been findings by the police department that the officers
have lied to internal affairs, to other police officers, or in
court," Compl. ¶ 49, ECF No. 1, creates an implication that
tends to harm her reputation——i.e., that she was placed on the
list because she is dishonest. Defendants do not dispute that
they published the communication. Further, the allegedly
defamatory implication results from the display of Plaintiff's
photograph and therefore applies to her. Plaintiff plausibly
alleges that a reasonable viewer would both understand the
defamatory implication and would understand that it applies to
her. Finally, she plausibly alleges injuries resulting from the
alleged defamation.

In a suit involving defamation of a public official where
the challenged statements relate to official conduct, a
plaintiff must also establish that the defendant acted with
"actual malice" in publishing the statement. N.Y. Times Co. v.
Sullivan, 376 U.S. 254, 280 (1964). It is uncontested that
Plaintiff is a public official for the purposes of First
Amendment analysis, and that the challenged statements concern

her role as a police officer. See Coughlin v. Westinghouse Broad. & Cable, Inc., 603 F. Supp. 377, 385 (E.D. Pa. 1985) ("Courts have consistently treated police officers as public officials within the meaning of *New York Times*."), aff'd, 780 F.2d 340 (3d Cir. 1985); see also Hammerstone v. Solebury Twp., No. 94-4515, 1994 WL 612794, at *7 (E.D. Pa. Nov. 7, 1994) (determining that the plaintiff, a police officer, is a public official for the purposes of his defamation claim). In an ordinary defamation case, actual malice is defined as "knowledge that [the defamatory statement] was false or . . . reckless disregard of whether it was false or not." N.Y. Times Co., 376 U.S. at 280.

However, the Third Circuit has held that the actual malice standard has an additional element in defamation-by-implication cases. Kendall v. Daily News Publ'g Co., 716 F.3d 82, 89 (3d Cir. 2013). In such cases, "the alleged defamatory statement has two possible meanings, one that is defamatory and one that is not." Id. Therefore, a plaintiff must demonstrate not only that the defendant "either knew that the defamatory meaning of their statement was false or were reckless in regard to the defamatory meaning's falsity," but also that the defendant intended to communicate the defamatory implication. Id. To satisfy this "communicative intent" element, a plaintiff must demonstrate "that the defendant either intended to communicate the

defamatory meaning or knew of the defamatory meaning and was reckless in regard to it." Id. This inquiry is "subjective [in] nature" and "requires that there be some evidence showing, directly or circumstantially, that the defendants themselves understood the potential defamatory meaning of their statement." Id. at 93.

Defendants argue Plaintiff has not met the pleading standard. To do so, they rely on two cases from courts in this circuit dismissing defamation-by-implication claims for failure to plead actual malice. In Pace v. Baker-White, 432 F. Supp. 3d 495, 515 (E.D. Pa. 2020), appeal filed, No. 20-1308 (3d Cir. 2020), the plaintiff "offer[ed] no facts—nor [could] he—to plausibly support Defendants' knowledge of falsity of any of the challenged statements." In Earley v. Gatehouse Media Pennsylvania Holdings, Inc., No. 3:12-1886, 2015 WL 1163787, at *3 (M.D. Pa. Mar. 13, 2015), the plaintiff "fail[ed] to provide any facts that could plausibly demonstrate that defendant acted with actual malice regarding either the falsity or communicative intent elements" needed to plead actual malice.

Defendants also argue that the broader context of the documentary belies a finding of actual malice. Specifically, they cite the documentary's inclusion of a 6ABC television news clip in which an anchor explains that officers are placed on the "Do Not Call List" for offenses including "assault, drug

14

dealing, mishandling evidence, [and] lying to authorities."
Defs.' Mot. to Dismiss 5, ECF No. 17-1. Defendants also
highlight that the documentary displays the snippet from the
Inquirer article containing the actual reason Plaintiff was
placed on the list.

While Defendants may pursue the argument that this context
precludes a finding of actual malice before the fact finder, the
argument fails at the motion-to-dismiss stage. Unlike the
plaintiffs in Pace and Earley, Plaintiff satisfies the "falsity"
element by plausibly alleging that Defendants knew the
defamatory implication was false because they possessed the
Philadelphia Inquirer article detailing the true reason for her
inclusion on the "Do Not Call List" (i.e, her arrest for an off-
duty confrontation) and in fact featured that article in the
documentary. See Pace, 432 F. Supp. 3d at 515; Earley, 2015 WL
1163787, at *3.

With respect to the "communicative intent" element,
Plaintiff plausibly alleges that Defendants either intended to
communicate the defamatory implication or knew of the defamatory
implication and were reckless in regard to it. Specifically, she
avers that although Defendants knew of the true reason for
Plaintiff's placement on the "Do Not Call List," they chose to
juxtapose her image with audio describing the officers on the
list as having "lied to internal affairs, to other police

officers, or in court." Compl. ¶ 49, ECF No. 1. The snippet from the article detailing the reason for Plaintiff's inclusion on the list appears in small print and scrolls rapidly on the screen, making it virtually unreadable and undermining Defendants' argument that the article's inclusion belies a finding of actual malice. For these reasons, Plaintiff adequately pleads actual malice. See Byars v. Sch. Dist. of Phila., No. 12-121, 2015 WL 4876257, at *9 (E.D. Pa. Aug. 13, 2015) (denying motion for summary judgment on defamation-by-implication claim because a reasonable fact finder could conclude that defendants acted with actual malice).

For these reasons, the Court will deny Defendants' Motions to Dismiss Plaintiff's defamation claim.

### 2.   False Light Invasion of Privacy

Under Pennsylvania law, the tort of false light invasion of privacy "imposes liability on a person who publishes material that 'is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity.'" Graboff v. Colleran Firm, 744 F.3d 128, 136 (3d Cir. 2014) (quoting Larsen v. Phila. Newspapers, Inc., 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (en banc)). Pennsylvania courts "consistently apply the same analysis" to defamation and false

light claims "when the causes of action are based on the same set of underlying facts." Id. at 137.

Plaintiff's Complaint states a claim for false light. For the reasons discussed in the Court's analysis of Plaintiff's defamation claim, see supra Section IV.B.1, Plaintiff has sufficiently pled that the implication at issue is not true, and that Defendants published the communication with knowledge or in reckless disregard of that falsity. Additionally, Plaintiff plausibly alleges that the implication that one "lied to internal affairs, to other police officers, or in court," Compl. ¶ 49, ECF No. 1, would be highly offensive to a reasonable person.

Therefore, the Court will deny Defendants' Motions to Dismiss Plaintiff's false light invasion of privacy claim.

### 3. Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must, "at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)).

Pennsylvania courts have found liability on IIED claims

"only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 231–32 (quoting Field v. Phila. Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)); see also Cheney v. Daily News L.P., 654 F. App'x 578, 583–84 (3d Cir. 2016) ("Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children.").

In Cheney v. Daily News, L.P., 102 F. Supp. 3d 708 (E.D. Pa. 2015), aff'd in part, rev'd in part on other grounds, 654 F. App'x 578 (3d Cir. 2016), a Philadelphia firefighter sued the New York Daily News for intentional infliction of emotional distress, inter alia, based on the use of his photograph in a newspaper article about a fire department sex scandal in which he was entirely uninvolved. The article was titled "Heated Sex Scandal Surrounds Philadelphia Fire Department: 'It's Bad Stuff.'" Cheney, 654 F. App'x at 580. A photograph of the plaintiff in his Philadelphia Fire Department uniform appeared below the headline with the caption, "Philadelphia firefighter Francis Cheney holds a flag at a 9/11 ceremony in 2006." Id. The newspaper moved to dismiss for failure to state a claim.

The District Court concluded that while "[b]eing falsely implicated in lewd or lascivious conduct is unfair and unfortunate," the article was not "extreme and outrageous" under Pennsylvania law. Cheney, 102 F. Supp. 3d at 718. The Third Circuit affirmed the District Court's dismissal of the claim. Cheney, 654 F. App'x at 583 ("[T]he article does not rise to the level of 'extreme and outrageous.'").

Likewise, while the allegedly false message Free Meek conveys about Plaintiff may state a claim for tortious conduct, it is not "extreme and outrageous" under Pennsylvania law. See id. Defendants' alleged conduct does not exceed "all possible bounds of decency," nor is it "utterly intolerable in a civilized community." See Reedy, 615 F.3d at 232 (quoting Field, 565 A.2d at 1184).

Therefore, the Court will grant Defendants' Motions to Dismiss Plaintiff's IIED claim. The Court will dismiss the claim without prejudice and with leave to amend.

### 4.  Civil Conspiracy

To state a claim for civil conspiracy, a plaintiff must allege: "1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage."

Kline v. Sec. Guards, Inc., 386 F.3d 246, 262 (3d Cir. 2004)
(quoting McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. Ct.
1998)). A cause of action for conspiracy requires "that two or
more persons combine or enter an agreement" to engage in the
unlawful conduct. Swartzbauer v. Lead Indus. Ass'n, 794 F. Supp.
142, 144 (E.D. Pa. 1992) (quoting Burnside v. Abbott Labs., 505
A.2d 973, 980 (Pa. Super. Ct. 1985)).

Additionally, "[p]roof of malice, i.e., an intent to
injure, is essential in proof of a conspiracy." Thompson Coal
Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). In this
context, "malice requires that the conspirators act with the
sole purpose of injuring the plaintiff." Sarpolis v. Tereshko,
625 F. App'x 594, 601 (3d Cir. 2016) (citing Thompson Coal Co.,
412 A.2d at 472); see also Conquest v. WMC Mortg. Corp., 247 F.
Supp. 3d 618, 637 (E.D. Pa. 2017) (dismissing a civil conspiracy
claim where the plaintiff "fail[ed] to allege any facts that
suggest[ed] the [defendants] acted contrary to their own
legitimate business interests or with the sole intent to harm
him").

Plaintiff's civil conspiracy claim fails because she pleads
neither an agreement nor malice. First, Plaintiff's allegations
that Defendants "jointly participated in the creation,
production and publishing of [Free Meek]," Compl. ¶ 12, ECF No.
1, with "a common purpose" to harm her, id. ¶ 144, are

conclusory and insufficient to establish that Defendants combined or agreed to engage in the challenged conduct. See Adams v. Teamsters Loc. 115, 214 F. App'x 167, 175 (3d Cir. 2007) ("[C]onclusory allegations of 'concerted action,' without allegations of fact that reflect joint action, are insufficient to meet [the pleading requirement].") (citing Lynn v. Christner, 184 F. App'x. 180, 184 (3d Cir. 2006)).

Second, Plaintiff's argument that Defendants' "central focus" in publishing her image was to brand her "with the label that she was a corrupt, dishonest, lying and perjuring police officer, knowing or with reckless disregard that she was not such a police officer," Pl.'s Resp. to Defs.' Mot. to Dismiss 32, ECF No. 26-1, is unpersuasive. The segment of the documentary at issue clearly aims to inform viewers about the existence of the "Do Not Call List" and, ostensibly, the reasons officers are placed on the list. It is implausible that Defendants' "sole purpose" in briefly displaying Plaintiff's image as part of this exposition was to injure her. See Sarpolis, 625 F. App'x at 601.

Therefore, the Court will grant Defendants' Motions to Dismiss Plaintiff's civil conspiracy claim. The Court will dismiss the claim without prejudice and with leave to amend.

**V.     CONCLUSION**

      For the foregoing reasons, the Court will deny Defendants' Motions to Dismiss Counts I and II of the Complaint and will grant without prejudice Defendants' Motions to Dismiss Counts III and IV. An order consistent with this memorandum will issue.