## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SAQUETA WILLIAMS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     **CIVIL ACTION NO.: 2:20-CV-03387-ER** |
| | : |
| ROC NATION, LLC, et al., | : |
| | : |
| Defendants. | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Michael Berry
berrym@ballardspahr.com
Elizabeth Seidlin-Bernstein
seidline@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500

*Attorneys for Defendant Amazon.com, Inc.*

Derek Jokelson
dej@jokelson.com
JOKELSON LAW GROUP, P.C.
230 South Broad St., 10th Floor
Philadelphia, PA 19102
Telephone: 215.735.7556

Cameron Stracher (*pro hac vice*)
cam@stracherlaw.com
CAMERON STRACHER, PLLC
51 Astor Place, 9th Floor
New York, NY 10003
Telephone: 646.992.3850

*Attorneys for Defendant Intellectual
Property Corporation*

Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212.849.7000

Allison L. McGuire (*pro hac vice*)
allisonmcguire@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: 202.538.8000

Ashley E. Shapiro
ashley.shapiro@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
Telephone: 215.665.8700

*Attorneys for Defendants Roc Nation, LLC,
Robert Rihmeek Williams, and Shawn Corey Carter*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT .............................................................................................................. 4

I.     WILLIAMS CANNOT STATE A CLAIM FOR CIVIL CONSPIRACY ......................... 4

II.    WILLIAMS CANNOT STATE A CLAIM FOR DEFAMATION OR
       FALSE LIGHT INVASION OF PRIVACY ...................................................... 7

CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Arsenal, Inc. v. Ammons,*
   2014 U.S. Dist. LEXIS 166783 (E.D. Pa. Dec. 2, 2014) ................................................4, 5, 6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................................13

*Bose Corp. v. Consumers Union,*
   466 U.S. 485 (1984) .................................................................................................................9

*Byars v. School District of Philadelphia,*
   2015 U.S. Dist. LEXIS 107074 (E.D. Pa. Aug. 13, 2015) ......................................................11

*Conquest v. WMC Mortg. Corp.,*
   247 F. Supp. 3d 618 (E.D. Pa. 2017) ..................................................................................4, 5

*Earley v. Gatehouse Media Pa. Holdings, Inc.,*
   2015 U.S. Dist. LEXIS 31065 (M.D. Pa. Mar. 13, 2015) ....................................................9, 14

*Garrison v. Louisiana,*
   379 U.S. 64 (1964) ...................................................................................................................8

*George v. Rehiel,*
   738 F.3d 562 (3d Cir. 2013) ..................................................................................................13

*Gertz v. Robert Welch,*
   418 U.S. 323 (1974) .................................................................................................................8

*Goldstein v. Phillip Morris, Inc.,*
   854 A.2d 585 (Pa. Super. 2004) ..............................................................................................6

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
   491 U.S. 657 (1989) ...............................................................................................................12

*James v. City of Wilkes-Barre,*
   700 F.3d 675 (3d Cir. 2012) ..................................................................................................10

*Kendall v. Daily News Publ'g Co.,*
   716 F.3d 82 (3d Cir. 2013) .......................................................................................7, 8, 11, 12

*Lee v. TMZ Prods., Inc.,*
   710 F. App'x 551 (3d Cir. 2017) .........................................................................................9, 13

*McCafferty v. Newsweek Media Grp., Ltd.,*
   955 F.3d 352 (3d Cir. 2020) ...................................................................................8, 9, 10, 13

*McKnight v. Baker*,
    415 F. Supp. 2d 559 (E.D. Pa. 2006) .......................................................6

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ..............................................................13

*Montgomery Cty. v. Merscorp, Inc.*,
    904 F. Supp. 2d 436 (E.D. Pa. 2012) .....................................................6

*Morilus v. Countrywide Home Loans, Inc.*,
    651 F. Supp. 2d 292 (E.D. Pa. 2008) .....................................................5

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964).................................................................7, 8, 9

*Newton v. NBC*,
    930 F.2d 662 (9th Cir. 1991) .............................................................9, 10

*Pace v. Baker-White*,
    432 F. Supp. 3d 495 (E.D. Pa. 2020) .....................................................9

*Parkland Servs. v. Maple Leaf Foods, Inc.*,
    2013 U.S. Dist. LEXIS 55240 (E.D. Pa. Apr. 18, 2013) ..............................5

*Reese v. Pook & Pook, LLC*,
    158 F. Supp. 3d 271 (E.D. Pa. 2016) ....................................................10

*Russell v. ABC*,
    1997 U.S. Dist. LEXIS 14589 (N.D. Ill. Sept. 19, 1997) ...........................11

*Sarpolis v. Tereshko*,
    625 F. App'x 594 (3d Cir. 2016) ...........................................................4

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)...........................................................10, 13

*Spern v. Time, Inc.*,
    324 F. Supp. 1201 (W.D. Pa. 1971).......................................................7

*Spitzer v. Abdelhak*,
    1999 U.S. Dist. LEXIS 19110 (E.D. Pa. Dec. 15, 1999) ............................6

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)..........................................................................8

*Synthes, Inc. v. Emerge Med., Inc.*,
    2012 U.S. Dist. LEXIS 134886 (E.D. Pa. Sept. 19, 2012) ..........................6

*Teeple v. Carabba*,
   2009 U.S. Dist. LEXIS 119937 (E.D. Pa. Dec. 22, 2009) ........................................................6

*Thompson Coal Co. v. Pike Coal Co.*,
   412 A.2d 466 (Pa. 1979) ................................................................................................4

*Turner v. KTRK Television, Inc.*,
   38 S.W.3d 103 (Tex. 2000)................................................................................................11

*Woods v. Evansville Press Co.*,
   791 F.2d 480 (7th Cir. 1986) ........................................................................................10, 11

**Other Authorities**

U.S. Const. amend. I ..........................................................................................1, 7, 8, 9

## PRELIMINARY STATEMENT

In her Amended Complaint, plaintiff Saqueta Williams attempts to re-plead a conspiracy claim and has revised her defamation allegations arising from the documentary series *Free Meek*. Like the original conspiracy count, however, the re-pled conspiracy claim is facially defective and must be dismissed.  Moreover, the new factual allegations demonstrate that Williams cannot plausibly plead actual malice, and therefore her defamation and false light claims should also be dismissed.  Indeed, the new factual allegations underscore the significant First Amendment principles at stake and make clear why early dismissal is particularly appropriate in this case.

As Williams now alleges, defendants produced and distributed *Free Meek* with the goal of truthfully and credibly shedding light on problems with the criminal justice system in Philadelphia, including the District Attorney's maintenance of a "Do Not Call List" for police officers who should not be called to testify in court due to their misconduct.  In acknowledging that defendants did not act with the ***sole*** purpose of defaming her, plaintiff has once again failed to establish an essential element of her conspiracy claim.

The Amended Complaint now also alleges that defendants had a "vital interest in projecting truthful information and impressions" in the documentary.  Am. Compl. ¶ 140.  That allegation and the other new allegations about defendants' motivations make evident the implausibility of Williams' theory that defendants intended to defame her by briefly displaying a snippet of a newspaper article about the Do Not Call List that included her image.  Williams simply has not alleged any facts—let alone facts that would provide clear and convincing evidence—that defendants intended to communicate the defamatory meaning that Williams alleges, or knew that such an implication was likely, as she must do to establish actual malice.

Rather, the new facts she has alleged render that theory implausible.  Thus, her defamation-by-implication and false light claims also fail as a matter of law.

Indeed, the actual malice standard was designed to permit media defendants the "breathing space" needed to advance debate on matters of public concern, without the threat of being subjected to costly and burdensome litigation over meritless claims.  This case—based on just one second of a three-hour documentary series advocating for criminal justice reform and brought by a former police officer who ***admits*** that she was on the Do Not Call List—illustrates the necessity of closely enforcing the actual malice standard at the pleading stage.

## STATEMENT OF FACTS

As the Court is aware,[1] this case arises from a five-part documentary series called *Free Meek*, which builds an argument for criminal justice reform by telling the story of rapper Meek Mill's fight for his freedom in a long-running case over charges of gun and drug possession. Am. Compl. ¶¶ 45-46; Dkt. No. 17-4 (true and correct copy of *Free Meek* with time codes added for ease of reference).  Plaintiff Saqueta Williams, a former police officer, takes issue with the documentary's one-second display of a snippet from a *Philadelphia Inquirer* article about the Do Not Call List that included her image as part of a scene discussing the List, its public release, and its implications for Meek Mill's case.  Am. Compl. ¶¶ 48-78; Dkt. No. 17-3 (true and correct copy of List); Dkt. No. 17-4 Ex. B-4 at 34:15-37:45.  Specifically, Williams alleges that the documentary falsely implies that she was placed on the List because she was "a dirty, corrupt, immoral, and dishonest police officer and that the Philadelphia Police Department made a finding that plaintiff lied to internal affairs, to other police officers, or in court."  *E.g.*, Am.

---

[1] Rather than repeating the full factual background of this case, defendants incorporate by reference the briefing in support of their motions to dismiss the original Complaint.  Dkt. Nos. 17-1, 19-1.

Compl. ¶ 57.  Instead, according to the Amended Complaint, Williams was placed on the List because of her arrest for assault and related charges after an off-duty confrontation in which she identified herself as a police officer, drew her firearm, and threatened four civilians.  *Id.* ¶¶ 22-28, 37.

Williams initially filed an action for defamation and/or negligent infliction of emotional distress based on the fleeting use of her image in *Free Meek* against several of the defendants in this case, but voluntarily dismissed that action without prejudice after defendants filed motions to dismiss for failure to state a claim.  *Williams v. Roc Nation, LLC*, No. 2:20-cv-00122-NIQA (E.D. Pa.).  She then filed this action based on the same core facts, adding new allegations to address the prior motions to dismiss and asserting claims for defamation, false light invasion of privacy, intentional infliction of emotional distress, and civil conspiracy.  *See* Compl., Dkt. No. 1, Counts I-IV.  Defendants again filed motions to dismiss for failure to state a claim, which this Court granted in part, dismissing the emotional distress and conspiracy claims without prejudice and granting Williams leave to amend those counts.  Dkt. Nos. 17, 19, 30, 31.  On November 2, 2020, Williams filed her Amended Complaint that is the subject of this motion.  Dkt. No. 33.

In her latest pleading, Williams revises a number of the allegations relating to defamation in an apparent effort to clarify that she is pursuing a defamation-by-implication claim and to bolster her contention that defendants intended to communicate the alleged implication and knew that such an implication was likely.  *Compare, e.g.*, Compl. ¶¶ 56, 60, 86-87, 93-98 *with* Am. Compl. ¶¶ 57, 61, 86-87, 91-98.  Williams also amends her civil conspiracy count to allege additional facts about the purpose and motivations behind the supposed conspiracy to defame her.  *Compare* Compl. Count IV *with* Am. Compl. Count III.  As detailed below, not only do the new factual allegations preclude Williams from stating a conspiracy claim, they also betray the

implausibility of Williams' claims for defamation and false light.  Defendants respectfully

request that the Amended Complaint be dismissed in its entirety.

**ARGUMENT**

**I.      WILLIAMS CANNOT STATE A CLAIM FOR CIVIL CONSPIRACY.**

Williams' renewed claim for civil conspiracy once again fails as a matter of law.  First,

notwithstanding her new factual allegations, Williams still has failed to plead malice, a key

element of a conspiracy claim.  *Sarpolis v. Tereshko*, 625 F. App'x 594, 601 (3d Cir. 2016).  For

the conspiracy tort, "malice requires that the conspirators act with the *sole purpose* of injuring

the plaintiff."  *Id.* (emphasis added); *see also, e.g.*, *Conquest v. WMC Mortg. Corp.*, 247 F. Supp.

3d 618, 637 (E.D. Pa. 2017) ("Malice is not found where there are facts establishing that the

person acted for professional reasons and not solely to injure the plaintiff."); *Arsenal, Inc. v.*

*Ammons*, 2014 U.S. Dist. LEXIS 166783, at *13 (E.D. Pa. Dec. 2, 2014) (dismissing civil

conspiracy claim where defendants acted "to enrich themselves and their existing businesses,"

not with sole purpose of harming plaintiff).  The Pennsylvania Supreme Court has imposed this

stringent requirement because "averments of a conspiracy are easily made."  *Thompson Coal Co.*

*v. Pike Coal Co.*, 412 A.2d 466, 473 (Pa. 1979).

As this Court already noted in its prior decision, the "segment of the documentary at issue

clearly aims to inform viewers about the existence of the 'Do Not Call List' and, ostensibly, the

reasons officers are placed on the list," thus rendering it implausible that defendants briefly

displayed Williams' newspaper image for the sole purpose of injuring her.  Dkt. No. 30 at 21.

The Amended Complaint catalogues an array of actions undertaken by defendants in connection

with the documentary that have nothing to do with Williams, including "casting," selecting

"locations where the documentary was filmed," "budgeting," "marketing," and "financ[ing] the

production."  Am. Compl. ¶ 137(n), (p), (u), (x), (aa).  These new allegations once again

4

highlight that it is utterly implausible that defendants undertook a tortious conspiracy for the purpose of harming Williams specifically. *See, e.g.*, *Parkland Servs. v. Maple Leaf Foods, Inc.*, 2013 U.S. Dist. LEXIS 55240, at *16-17 (E.D. Pa. Apr. 18, 2013) (defendants' actions "for their own financial gain," which "had the incidental effect" of injuring plaintiff, were insufficient to establish malice).

Moreover, Williams now alleges that defendants produced and distributed the episode of *Free Meek* discussing the Do Not Call List to convey several messages, including that a "cancer of corruption and misconduct existed within the Philadelphia Police Department," that the "City of Philadelphia is riven with landmark scandals" and "is deserving of the name 'Filthadelphia,'" and that "[c]orruption implicating dishonest behavior and bribery was commonplace among Philadelphia law enforcement officers and members of the Philadelphia Police Department." Am. Compl. ¶ 136(c)-(f). By identifying these other messages that defendants intended to convey, separate and apart from any message they allegedly intended to convey about Williams, Williams concedes that inflicting harm on her was not defendants' ***sole*** purpose.[2] *See, e.g.*, *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 313 (E.D. Pa. 2008) (malice not established where "plaintiffs were guided by personal interests separate from any alleged desire to cause harm to" alleged victim of conspiracy). Indeed, even if defendants had purposely defamed Williams in order to advance the documentary's themes about the criminal justice system (which they did not), that would not be enough to meet the malice element of her

---

[2] Nor do Williams' new allegations that defendants purportedly "acted contrary to their own legitimate business interests," Am. Comp. at 26, help to support her conspiracy claim. Instead, these allegations simply enumerate additional motivations that defendants may have had in producing and distributing *Free Meek*, including informing the public, "establish[ing] a reputation as documentarians," and earning a profit. Am. Compl. ¶¶ 138-44. All of these motivations negate a finding that defendants' sole purpose was to injure Williams. *See Conquest*, 247 F. Supp. 3d at 637; *Arsenal*, 2014 U.S. Dist. LEXIS 166783, at *13.

conspiracy claim.  *See, e.g.*, *Arsenal*, 2014 U.S. Dist. LEXIS 166783, at *14 (seeking to achieve

a "goal by unsavory, even fraudulent means" is "not enough to satisfy Pennsylvania's standard

of malice for civil conspiracy"); *Montgomery Cty. v. Merscorp, Inc.*, 904 F. Supp. 2d 436, 453

(E.D. Pa. 2012) ("Malice requires proof that the conspirators took unlawful actions with the

specific intent to injure the plaintiff, instead of simply furthering their own interests through

unlawful means."); *Synthes, Inc. v. Emerge Med., Inc.*, 2012 U.S. Dist. LEXIS 134886, at *132

(E.D. Pa. Sept. 19, 2012) ("The fact that it may have been necessary to deceive Plaintiff or to

otherwise willfully and maliciously commit various torts against Plaintiff in order to carry out

this scheme does not equate to an allegation that the conspiracy was formed with the sole intent

to injure Plaintiff."); *Spitzer v. Abdelhak*, 1999 U.S. Dist. LEXIS 19110, at *31 (E.D. Pa. Dec.

15, 1999) (dismissing civil conspiracy claim that pled allegations of fraud because "[a]s

Plaintiffs have stated elsewhere, the defendant's purpose of the conspiracy was to benefit

themselves personally and professionally").

Because Williams has not, and clearly cannot, plead that defendants acted with the sole

purpose of injuring her, her civil conspiracy claim should be dismissed with prejudice.[3]

---

[3] Additionally, if this Court dismisses the underlying claims for defamation and false light for the
reasons set forth in the following section, Williams cannot state a claim for conspiracy either.
*See Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004) ("[A]bsent a civil
cause of action for a particular act, there can be no cause of action for civil conspiracy to commit
that act."); *McKnight v. Baker*, 415 F. Supp. 2d 559, 564 (E.D. Pa. 2006) (Robreno, J.)
("Conspiracy is not actionable without commission of some wrong giving rise to cause of action
independent of conspiracy."), *aff'd*, 244 F. App'x 442 (3d Cir. 2007); *Teeple v. Carabba*, 2009
U.S. Dist. LEXIS 119937, at *88 (E.D. Pa. Dec. 22, 2009) (Robreno, J.) (dismissing civil
conspiracy claim because all underlying causes of actions were dismissed), *aff'd*, 398 F. App'x
814 (3d Cir. 2010).

## II.    WILLIAMS CANNOT STATE A CLAIM FOR DEFAMATION OR FALSE LIGHT INVASION OF PRIVACY.

Williams' defamation and false light claims should also be dismissed because the new

factual allegations in the Amended Complaint demonstrate that she cannot plausibly plead

"actual malice."  In particular, the new allegations reveal the implausibility of Williams' theory

that defendants intended to communicate the defamatory meaning she alleges or knew that such

an implication was likely—because she now alleges defendants aimed to be truthful.

Recognizing "a profound national commitment to the principle that debate on public

issues should be uninhibited, robust, and wide-open," the Supreme Court has long held that

defamation and other speech-based torts are subject to strict limitations imposed by the First

Amendment.  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  The purpose of those

limitations is "to avoid chilling protected speech," even if it means "permitting some libelous

conduct."  *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 91 (3d Cir. 2013).  This "breathing

space" is critical to ensuring free discourse on matters of public concern and the performance of

public officials.  *Sullivan*, 376 U.S. at 272 *see also id.* at 273 ("Cases which impose liability for

erroneous reports of the political conduct of officials reflect the obsolete doctrine that the

governed must not criticize their governors."); *Spern v. Time, Inc.*, 324 F. Supp. 1201, 1204

(W.D. Pa. 1971) ("Unless persons, including newspapers, desiring to exercise their First

Amendment rights are assured freedom from the harassment of lawsuits, they will tend to

become self-censors." (internal quotation marks omitted)).  Those weighty constitutional

interests are directly implicated in this case, which centers on a documentary about systemic

issues in the criminal justice system and a scene describing the public controversy sparked by the

revelation that the Philadelphia District Attorney had placed numerous police officers on a Do

7

Not Call List.  *See Gertz v. Robert Welch*, 418 U.S. 323, 341 (1974) ("The First Amendment requires that we protect some falsehood in order to protect speech that matters.").

Among the strict limitations demanded by the Constitution in cases, like this one, brought by a public official, the First Amendment ultimately requires the plaintiff to prove by clear and convincing evidence that the allegedly false statements were published with "actual malice."[4] *Sullivan*, 376 U.S. at 280.  This is a "demanding standard," *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020), that permits liability only for a "calculated falsehood," *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964).

The actual malice standard has two components.  *See* Dkt. No. 30 at 12-14.  First, a public official must show that the communication at issue was made with knowledge of its falsity or with a "high degree of awareness" of its "probable falsity."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (internal quotation marks omitted).  Second, when the claim at issue involves an alleged false implication, the First Amendment requires that a public official show "communicative intent."  *Kendall*, 716 F.3d at 91.  Specifically, the plaintiff must establish that "the defendant either ***intended*** to communicate the defamatory meaning" or "***knew*** that the defamatory meaning was not just possible, but ***likely***, and still made the statement despite . . . ***knowledge of that likelihood***."  *Id.* (emphasis added); *see also id.* (emphasizing that "mere knowledge of the defamatory meaning of a statement that also has a nondefamatory meaning cannot be enough").

As the Third Circuit has observed, this additional layer of protection is necessary in implication cases, as courts cannot "presume with certainty that the defendants knew they were

---

[4] As this Court previously noted, "Plaintiff is a public official for the purposes of First Amendment analysis, and that the challenged statements concern her role as a police officer." Dkt. No. 30 at 12-13.

making a defamatory statement because the statement has defamatory and nondefamatory meanings." *Id.* at 90.  Indeed, if public officials were not required to "establish an intent to defame," *id.*, a speaker could be exposed to liability "not only for what was not said but also for what was not intended to be said," which would "eviscerate[] the First Amendment protections established by *New York Times*."  *Newton v. NBC*, 930 F.2d 662, 681 (9th Cir. 1991).

"Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'"  *Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 (1984); *see also Sullivan*, 376 U.S. at 285 (courts serve as a safeguard to confirm a defamation claim "does not constitute a forbidden intrusion on the field of free expression").  Accordingly, as the Third Circuit has instructed, courts should apply this standard vigorously at all stages of litigation – including on the pleadings.  *See, e.g.*, *McCafferty*, 955 F.3d at 359-60 (affirming dismissal of defamation and false light claims for failure to adequately plead actual malice); *Lee v. TMZ Prods., Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) (explaining that actual malice "imposes a heavy burden" and affirming dismissal of defamation claim for failure to adequately plead actual malice); *Pace v. Baker-White*, 432 F. Supp. 3d 495, 514 (E.D. Pa. 2020) (failure to plead actual malice "regularly results in early dismissal of an action" and dismissing case on that ground), *cross-appeals filed*, Nos. 20-1308, 20-1401 (3d Cir. Feb. 13 & 28, 2020); *Earley v. Gatehouse Media Pa. Holdings, Inc.*, 2015 U.S. Dist. LEXIS 31065, at *5-6, *7 (M.D. Pa. Mar. 13, 2015) (stating that "adequately pleading actual malice is an onerous task" that presents plaintiffs with a "high hurdle" in "libel by implication" cases and dismissing claims on actual malice grounds).

Courts evaluating the plausibility of alleged actual malice in defamation-by-implication cases regularly dismiss these claims for failing to plead facts that plausibly allege actual malice. In *McCafferty*, for example, the plaintiff cited three pieces of circumstantial evidence to support his defamation-by-implication claim—departure from journalistic standards, the defendant's financial motive, and a large photo of the plaintiff at the top of the article. *See McCafferty*, 955 F.3d at 359. The Third Circuit concluded, however, that the plaintiff "does not plead facts that suggest actual malice." *Id.* at 360.

In her Amended Complaint, Williams now undermines her sole factual allegation to support her claim of actual malice: that defendants "chose to juxtapose" the newspaper clip showing her image with the voiceover about officers lying to authorities. Am. Compl. ¶¶ 86, 140.[5] This juxtaposition alone is not enough to establish defendants' knowledge of the defamatory implication or intent to communicate it, because the mere fact that the audience might perceive a defamatory implication does not suffice to show that the implication was known or intended by the defendant. *See, e.g.*, *Newton*, 930 F.2d at 681 (rejecting notion that "because the broadcast may be capable of supporting the impression [plaintiff] claims, [defendant] must therefore have intended to convey the defamatory impression at issue here" and reversing jury verdict on this basis); *Woods v. Evansville Press Co.*, 791 F.2d 480, 487 (7th Cir.

---

[5] The Amended Complaint also includes a rote recital of the legal elements of actual malice, alleging, for example, that defendants "inten[ded]," "knew," and acted "with a reckless disregard" of the defamatory implication. *See* Am. Compl. ¶¶ 86-87, 91-96. But, those allegations cannot be credited on a motion to dismiss and are insufficient to plead a claim of actual malice. *See, e.g.*, *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (court should disregard "rote recital[] of the elements"); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (plaintiff must plead more than "actual-malice buzzwords"); *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 289 (E.D. Pa. 2016) ("[M]erely alleging actual malice is insufficient; courts are not bound to accept as true legal conclusions couched as factual allegations.").

1986) (holding that "[s]imply because a statement reasonably can be read to contain a

defamatory inference does not mean . . . that the publisher of the statement either intended the

statement to contain such a defamatory implication or even knew that readers could reasonably

interpret the statement to contain the defamatory implication."); *Russell v. ABC*, 1997 U.S. Dist.

LEXIS 14589, at *27 (N.D. Ill. Sept. 19, 1997) ("While a viewer may reasonably interpret the

[news] segment as insinuating that [plaintiff] was dishonest or unscrupulous, this is not enough

to show that [the producer] knew the segment conveyed this message or that he subjectively

entertained serious doubts as to whether the segment gave this impression." (internal quotation

marks omitted)); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 121 (Tex. 2000) (explaining

that the fact that "a reasonable viewer" could interpret report to convey defamatory meaning

"does not by itself establish clear and convincing evidence of actual malice" and rejecting

implication claim on this ground); *see also Kendall*, 716 F.3d at 93 (affirming JNOV for

newspaper where article conveyed false implication because "[t]he subjective nature of [the

'communicative intent'] inquiry require[d] that there be some evidence showing, directly or

circumstantially, that the defendants themselves understood the potential defamatory meaning of

their statement" and plaintiff failed to meet that burden).[6]

     Even if the juxtaposition alone were sufficient, Williams now undermines even that

allegation, pleading for the first time that defendants "maintained a vital interest in projecting

---

[6] The case cited in this Court's prior opinion, *Byars v. School District of Philadelphia*, 2015 U.S.
Dist. LEXIS 107074 (E.D. Pa. Aug. 13, 2015) (cited at Dkt. No. 30 at 16), is not to the contrary.
In that case, the plaintiff claimed a statement issued to *The Philadelphia Inquirer* saying that he
"approved" a contract falsely implied he had done something wrong.  The court found
circumstantial evidence that the defendants intended to convey that implication because they told
the newspaper the plaintiff "approved" the contract knowing (1) the newspaper was
"investigating the alleged improprieties surrounding the contract award," and (2) the newspaper
previously "suggest[ed]" the contract decision "was improper." *Id.* at *26.

truthful information and impressions in their documentary work product," Am. Compl. ¶ 140, and also "maintained a vital interest in upholding a standard of professional journalist integrity," *id.* ¶ 142.  She pleads defendants "sought to establish a reputation as documentarians and entities that create and publish documentary work product(s) which contain reliable and credible factual representations and impressions," *id.* ¶ 143, and that they "sought to establish a reputation as documentarians and entities that create and publish documentary work product(s) which provide truthful information and impressions," *id.* ¶ 144.  In light of these new allegations regarding defendants' intent, Williams' theory that defendants intended to convey a false impression by using her image for one second in juxtaposition with audio describing officers on the Do Not Call List as having lied to authorities is simply not plausible.  In fact, the new allegations directly defeat any claim that Williams could meet the demanding standard that defendants "knew that the defamatory meaning was not just possible, but likely." *Kendall*, 716 F.3d at 91.

The implausibility of Williams' claim for actual malice is compounded by the context surrounding the use of her image. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (directing courts assessing claims of actual malice to "examine for [themselves] the statements in issue and the circumstances under which they were made" (internal quotation marks omitted)).  The documentary did not use her image in isolation, but showed a newspaper article about police officers on the Do Not Call List that included Williams' photo and the reasons for her inclusion on the List, among many other officers who had been included on the List.  Dkt. No. 17-4 Ex. B-4 at 35:37-47, 35:52-36:02, 36:38-43.  Immediately before that montage, the documentary explained the nature of the List by showing a television news report explicitly stating that officers were placed on the List for many kinds of misconduct—including assault.  *Id.* at 35:28-44.

Although this Court observed in its prior opinion that "[t]he snippet from the article detailing the reason for Plaintiff's inclusion on the list appears in small print and scrolls rapidly on the screen, making it virtually unreadable," Dkt. No. 30 at 16, the rapid display of the text, standing alone, is insufficient to show an intent to falsely convey that Williams was placed on the List for a different reason.  After all, if defendants' intent had been to deceive the documentary's viewers, there would have been no reason for them to show this information at all.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (allegation of unlawful intent was not plausible when "obvious alternative explanation" of lawful intent existed for defendant's actions (internal quotation marks omitted)); *George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013) (same); *see also Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 705 (11th Cir. 2016) (affirming dismissal for failure to plead actual malice when "defendants included information contrary to their conclusions in the text of the article itself," which "undermined [plaintiff's] claim that they acted with actual malice").

At worst, if defendants were imperfect in their attempt to tell the truth because they displayed the text of the article too quickly for the average viewer to read, their "carelessness is an indication of negligence, not actual malice."  *Schatz*, 669 F.3d at 58 (internal quotation marks omitted); *see also McCafferty*, 955 F.3d at 359 ("even an extreme departure from professional standards, without more, will not support a finding of actual malice" (internal quotation marks omitted)); *Lee*, 710 F. App'x at 560 (affirming dismissal where allegations "rise to no more than professional negligence").  It does not show defendants ***intended*** to report something different than what the article said or what the television news report at the outset of the scene explained, particularly in light of Williams' new allegations about defendants' overriding vital interests and motivations.

At bottom, Williams has not cleared the "high hurdle" of adequately alleging actual malice for her defamation-by-implication and false light claims. *Earley*, 2015 U.S. Dist. LEXIS 31065, at \*7.  Even if *Free Meek* falsely implied that Williams was placed on the List for lying to authorities as she alleges, the Amended Complaint shows that she cannot meet her threshold constitutional burden of showing that defendants intended to convey that implication.  Under long-standing precedent, her defamation and false light claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Williams' Amended Complaint should be dismissed with prejudice.

Dated: November 16, 2020

Respectfully submitted,

BALLARD SPAHR LLP

By:   */s/ Michael Berry*

*/s/ Alex Spiro*

Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212.849.7000

Allison L. McGuire (*pro hac vice*)
allisonmcguire@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: 202.538.8000

Ashley E. Shapiro
ashley.shapiro@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
Telephone: 215.665.8700

*Attorneys for Defendants Roc Nation, LLC,
Robert Rihmeek Williams, and Shawn Corey
Carter*

Michael Berry
berrym@ballardspahr.com
Elizabeth Seidlin-Bernstein
seidline@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

*Attorneys for Defendant Amazon.com, Inc.*

*/s/ Derek Jokelson*

Derek Jokelson
dej@jokelson.com
JOKELSON LAW GROUP, P.C.
230 South Broad St., 10th Floor
Philadelphia, PA 19102
Telephone: 215.735.7556
Facsimile: 215.985.0476

Cameron Stracher (*pro hac vice*)
cam@stracherlaw.com
CAMERON STRACHER, PLLC
51 Astor Place, 9th Floor
New York, NY 10003
Telephone: 646.992.3850
Facsimile: 646.992.4241

*Attorneys for Defendant Intellectual Property
Corporation*